United States District Court
Southern District of Texas
**ENTERED**
December 12, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| SIS, LLC | § | |
| | § | |
| *Plaintiff,* | § | |
| VS. | § | CIVIL ACTION NO. 4:22-CV-891 |
| | § | |
| ORION GROUP HOLDINGS, INC. | § | |
| | § | |
| *Defendant.* | § | |

## ORDER

Pending before the Court is Defendant Orion Group Holdings, Inc.'s ("Defendant") Motion for Partial Summary Judgment and Alternative Motion to Compel. (Doc. No. 67).[1] Plaintiff SIS, LLC ("Plaintiff") filed a Response. (Doc. No. 68). After considering the pleadings, the facts, and the law, the Court hereby **DENIES** Defendant's Motion for Partial Summary Judgment. (Doc. No. 67).

### I. Background

This case involves contract disputes. The first contract between Plaintiff and Defendant was the Professional Services Agreement ("PSA"). It became effective in June 2010. Under the PSA, Plaintiff provided software consulting services for Defendant. After approximately ten years of performance under the PSA, the parties entered into a second agreement, the SaaS Services Agreement ("SaaS Agreement"), which was to last five years. It was entered into in 2020. Under that agreement, Plaintiff agreed to provide Defendant with different software, including but not

---

[1] On November 7, 2023, the Court held a motion hearing via telephone in which the Court heard the arguments of counsel and denied Defendant's Alternative Motion to Compel. Thus, the only motion before the Court is Defendant's Partial Motion for Summary Judgment. (Doc. No. 67).

limited to Microsoft Dynamics 365, which Defendant purchased as part of a project to implement a new enterprise-wide software system.

Eventually, a disagreement occurred, and Defendant stopped payment under the SaaS Agreement. Defendant only paid one of the five required payments. Plaintiff sued Defendant to recover the remaining payments. As part of Defendant's answer, it asserted a counterclaim. The counterclaim alleges that Plaintiff's "services under the PSA failed in their entirety." (Doc. No. 36 at 6).

In its Motion for Partial Summary Judgment, Defendant is requesting that the Court dismiss Plaintiff's breach of contract claim related to the SaaS Agreement because Plaintiff "has no admissible damages evidence." (Doc. No. 67 at 1). In support of this motion, Defendant argues that Plaintiff has failed to: (1) identify any liability or damages expert for its affirmative claim, (2) produce any expert reports, or (3) provide responsive information to Orion's written discovery seeking its net profit evidence. (*Id.* at 6-7). In response, Plaintiff argues that the lay witness testimony of Mark Kershteyn ("Kershteyn"), one of three owners who founded SIS in 1996, is sufficient to create a genuine issue of material fact as to damages under the contract. (Doc. No. 68 at 12). Plaintiff argues that it does not need to designate a liability or damages expert because the lay testimony of a business owner is admissible (and sufficient) to show a genuine issue of material fact as to damages. For the reasons set forth below, this Court agrees.

## II. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

### III. Discussion

The SaaS agreement is governed by Georgia law. In Georgia, "damages for breach of contract claims are compensatory awards designed to give the injured party the benefit of his bargain." *Turner Broad. Sys. v. McDavid*, 303 Ga. App. 593, 612 (2010).

In Georgia, there are two types of lost profits: "(1) lost profits which are direct damages and represent the benefit of the bargain (such as a general contractor suing for the remainder of the contract price less his saved expenses), and (2) lost profits which are indirect or consequential damages such as what the user of the MRI would lose if the machine were not working and he was unable to perform diagnostic services for several patients." *Imaging Sys. Int'l v. Magnetic Resonance Plus*, 227 Ga. App. 641, 643-44 (1997). In 2020, the Georgia Court of Appeals held that lost profits that can be traced solely to the breach are the "immediate fruit" of the contract and

3

constitute direct, rather than consequential, damages. *Mitchell & Assocs. v. Glob. Sys. Integration*, 356 Ga. App. 200, 202-03 (2020). Lost profits necessarily inherent in the contract "are always provable." *Franklin v. Demico*, 179 Ga. App. 775, 779 (1986) (emphasis added).

In an action for <u>direct</u> lost profits damages, *Williams v. Kerns*, 153 Ga. App. 259, 266 (1980) controls. When a plaintiff seeks direct lost profits damages resulting from a breach of contract, the final damages amount is reached "by subtracting from the contract price the amount which full performance would have cost [the plaintiff]." *Id*. Here, it is clear based on the Second Amended Complaint that SIS is seeking direct damages traced solely to Orion's alleged breach. (Doc. No. 25). As a result, the measure of damages should be the SaaS contract price for the remaining four years subtracted by "the amount which full performance would have cost SIS." (Doc. No. 68 at 12-13; Doc. No. 67 at 6).

It is at this point where the parties seem to diverge in their understanding of lost profits damages under Georgia law. SIS does not directly dispute Orion's characterization of the law, nor does it cite any Georgia case law in its Response. Nevertheless, SIS clearly disagrees about what is required to adequately calculate SIS's savings resulting from Orion's alleged breach.

Orion contends that SIS needs to prove "a history of profits and its alleged lost net profits with reasonable certainty for the last four years of the SaaS agreement." (Doc. No. 67 at 6-7). To do so, Orion insists that SIS must designate an expert and provide profit and loss statements, among other documents. (*Id.*).[2] To support its contention that Georgia law requires this heightened showing by the plaintiff, Orion relies on cases that analyze the burden of proving <u>consequential</u> lost profits damages rather than direct damages. *Triad Drywall, LLC v. Bldg. Materials Wholesale,*

---

[2] For example, in its corresponding Motion to Compel (which the Court denied), Orion requested that the Court compel SIS to "identify your customers and net profit, after deducting costs of goods and services sold and other expenses, on the twenty-seven similar projects" involving different customers and contracts. (Doc. No. 67 at 8).

4

*Inc.*, 300 Ga. App. 745, 686 (2009); *EZ Green Assocs., LLC v. Ga.-Pacific Corp.*, 331 Ga. App. 183, 188, 770 S.E.2d 273, 277 (2015). Orion also relies on *Legacy Acad., Inc. v. JLK, Inc., 330 Ga. App. 397, 399-400* (2014), which concerned the calculation of anticipated future profits under a franchising contract and quoted heavily from *KAR Printing v. Pierce*, 276 Ga. App. 511, 511-512 (2005), a case which outlined the standard for proving <u>consequential</u> lost profits damages.

Although SIS does not directly dispute Orion's characterization of the plaintiff's burden, SIS insists that the affidavit of its owner, Mark Kershteyn, is enough to raise an issue of material fact as to its damages. (Doc. No. 68 at 13). Kershteyn plans to testify as a lay witness that the only savings resulting from the breach were the Microsoft licensing fees, which would have amounted to pay $185,000 for each year of the contract. (*Id.*). SIS contends that "all other costs associated with maintenance of software sold under the SaaS Agreement are fixed costs that were incurred by SIS whether or not Defendant honored the SaaS Agreement." (*Id.* at 14). Ultimately, SIS argues that it can rely on Kershteyn's affidavit to show that its only savings were the Microsoft license fees and that any other information demanded by Orion is not necessary to prove net contractual loss. (Doc. No. 68 at 58). Indeed, per *Williams v. Kerns*, SIS does not even need to show a "history of profits" to recover direct damages under the contract—SIS simply needs to subtract from the contract price "the amount which full performance would have cost the contractor." 153 Ga. App. at 267.[3]

---

[3] The Court notes that the SaaS contract contains a limitation of liability clause stating that "neither party shall be liable for any indirect, incidental, special, punitive, or consequential damages, or any loss of revenue or profits (excluding fees under the agreement)." (Doc. No. 70-3 at 6). Neither party mentions this limitation of liability provision, but the agreement **specifically permits an action for direct lost profits damages** to the extent those "profits" constitute the fees under the agreement and **specifically forbids an action for consequential lost profits damages**.

5

When viewed in the light most favorable to SIS, the Court finds that SIS has raised a genuine issue of material fact as to the direct damages associated with the termination of the SaaS contract.

First, Kershteyn, as a business owner, may testify as to the lost profits associated with the contract—direct, consequential, or otherwise. Rule 701 of the Federal Rules of Evidence provides the following:

> If a witness is not testifying as an expert, testimony in the form of an opinion is limited to one that is: (a) rationally based on the witness's perception; (b) helpful to clearly understanding the witness's testimony or to determining a fact in issue; and (c) not based on scientific, technical, or other specialized knowledge within the scope of Rule 702.

The Advisory Committee to the 2000 amendments to FRE 701 notes that "most courts have permitted the owner or officer of a business to testify to the value of projected profits of the business, without the necessity of qualifying the witness as an accountant, appraiser, or similar expert." Fed. R. Evid. 701 Advisory Committee's Note. Indeed, "such opinion testimony is admitted not because of experience, training, or specialized knowledge within the realm of an expert, but because of the particularized knowledge that the witness has by virtue of his or her position in the business." *Id.* The Fifth Circuit has found no abuse of discretion when a district court permits a layperson witness to testify regarding lost profits damages in a breach of contract case, as long as the witness has direct knowledge of the business accounts underlying the profit calculation and the computation method complies with the relevant state law on lost profits. *Mississippi Chem. Corp. v. Dresser-Rand Co.*, 287 F.3d 359, 373-74 (5th Cir. 2002). Here, Kershteyn's affidavit notes that, as a partner in SIS, he has "personal knowledge" to testify regarding lost profits under the contract and that he is "actively involved in the company's business operations, its dealings with Orion, in particular." (Doc. No. 68 at 22-23).

Kershteyn's affidavit indicates that SIS "saved a total of $555,000 because Defendant's breach of the SaaS agreement relieved SIS of its duty to secure and provide the Microsoft licensing." (Doc. No. 68 at 24). He further explains that "all other costs associated with maintenance of software sold under the SaaS Agreement are fixed costs that were incurred by SIS whether or not Defendant honored the SaaS Agreement." (*Id.*). In his affidavit, Kershteyn explains his final calculated loss total, including the contract balance and the savings associated with the breach. (*Id.*). The Court finds that this is enough to raise a genuine issue of fact as to direct lost profits damages associated with the alleged breach.

For the foregoing reasons, the Court hereby **DENIES** Defendant's Motion for Partial Summary Judgment on the issue of lost profits damages. (Doc. No. 67).

Signed at Houston, Texas, on this the __11__ day of December, 2023.

Andrew S. Hanen
United States District Judge