United States District Court
Southern District of Texas
**ENTERED**
December 12, 2023
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SIS, LLC § | |
| § | |
| *Plaintiff,* § | |
| VS. § | CIVIL ACTION NO. 4:22-CV-891 |
| § | |
| ORION GROUP HOLDINGS, INC. § | |
| § | |
| *Defendant.* § | |
| § | |
| § | |
| § | |

## ORDER

Pending before the Court is Plaintiff SIS, LLC's ("Plaintiff") Motion for Summary Judgment. (Doc. No. 70). Defendant Orion Group Holdings, Inc. ("Defendant") filed a Response and Alternative Motion to Continue. (Doc. No. 71). Plaintiff filed a Reply (Doc. No. 75) and a Response to Defendant's Motion to Continue. (Doc. No. 76). Plaintiff also filed an Objection to Defendant's Evidence Offered in Rebuttal to Plaintiff's Motion for Summary Judgment. (Doc. No. 77). The Court hereby **DENIES** Plaintiff's Motion for Summary Judgment (Doc. No. 70) and **DENIES** as moot Defendant's Motion to Continue (Doc. No. 71). The Court also **DENIES** Plaintiff's Objection to Defendant's Evidence Offered in Rebuttal to Plaintiff's Motion for Summary Judgment. (Doc. No. 76).

### I. Background

This case involves contract disputes. The first contract between Plaintiff and Defendant was the Professional Services Agreement ("PSA"). It became effective in June 2010. Under the PSA, Plaintiff provided software consulting services for Defendant. After approximately ten years of performance under the PSA, the parties entered into a second agreement, the SaaS Services

Agreement ("SaaS Agreement"), which was to last five years. It was entered into in 2020. Under that agreement, Plaintiff provided Defendant with different software, including but not limited to Microsoft Dynamics 365, that Defendant purchased as part of a project to implement a new enterprise-wide software system.

Eventually, a disagreement occurred, and Defendant stopped payment under the SaaS Agreement. Defendant only paid one of the five required payments. Plaintiff sued Defendant to recover the remaining payments. As part of Defendant's answer, it asserted a counterclaim. The counterclaim alleges that Plaintiff's services under the related PSA "failed in their entirety." (Doc. No. 36 at 6).

In its Motion for Summary Judgment, SIS argues that it is entitled to summary judgment on its breach of contract claim against Orion because "the [SaaS] [A]greement is unambiguous" and there is no genuine issue of material fact as to whether Orion breached. (Doc. No. 70 at 1). SIS also contends that its damages, including pre- and post-judgment interest and attorney's fees, are "undisputable" as a matter of law. (*Id.* at 20). Regarding the PSA, SIS argues that "Defendant failed to dispute any invoice submitted by SIS for implementation consulting services performed on the ERP Project under the PSA." (*Id.* at 22). SIS insists that, as a result, it is entitled to judgment as a matter of law on Orion's counterclaim for breach of warranty under the PSA.[1]

In response, Orion argues that SIS: 1) cannot prove breach of the SaaS contract as a matter of law; 2) did not perform its obligations under the SaaS contract; 3) has no competent damages evidence; and 4) is not entitled to attorney's fees. (Doc. No. 71). Additionally, Orion argues that

---

[1] The Court notes that Orion did not explicitly plead a cause of action for breach of warranty. (Doc. No. 36, Doc. No. 37). Nonetheless, both parties characterize the counterclaim as a breach of warranty claim, and as the Court has previously noted, "[SIS] did agree to a certain standard of performance, and [Orion] claims that [SIS] did not achieve that standard." (Doc. No. 58 at 4). The Court will therefore refer to Orion's counterclaim as a breach of warranty claim.

2

SIS is not entitled to summary judgment on Orion's counterclaim because SIS did not meet its obligations under the PSA. Orion contends that SIS's argument regarding the contractual invoice dispute mechanism fails because this is not a "billing dispute." (Doc. No. 71 at 20).

## II. Legal Standard

Summary judgment is warranted "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant bears the burden of identifying those portions of the record it believes demonstrate the absence of a genuine issue of material fact." *Triple Tee Golf, Inc. v. Nike, Inc.*, 485 F.3d 253, 261 (5th Cir. 2007) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–25 (1986)).

Once a movant submits a properly supported motion, the burden shifts to the non-movant to show that the court should not grant the motion. *Celotex*, 477 U.S. at 321–25. The non-movant then must provide specific facts showing that there is a genuine dispute. *Id.* at 324; *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). A dispute about a material fact is genuine if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). The court must draw all reasonable inferences in the light most favorable to the nonmoving party in deciding a summary judgment motion. *Id.* at 255. The key question on summary judgment is whether there is evidence raising an issue of material fact upon which a hypothetical, reasonable factfinder could find in favor of the nonmoving party. *Id.* at 248. It is the responsibility of the parties to specifically point the Court to the pertinent evidence, and its location, in the record that the party thinks are relevant. *Malacara v. Garber*, 353 F.3d 393, 405 (5th Cir. 2003). It is not the duty of the Court to search the record for evidence that might establish an issue of material fact. *Id.*

## III. Analysis

**A. Plaintiff's Motion for Summary Judgment (Doc. No. 70)**

The Court will address whether Orion has met its burden to show a genuine issue of material fact as to breach of the SaaS Agreement and the resulting damages. The Court will then consider whether SIS is entitled to summary judgment on Orion's counterclaim for breach of warranty under the PSA.

### a. Breach of the SaaS Agreement

SIS asks the Court to find as a matter of law that Orion breached the SaaS contract when, after paying the first installment payment, it failed to pay subsequent payments due under the contract. Orion argues that it properly terminated under the Term and Termination provision because 1) SIS materially breached, and 2) Orion provided proper notice.

#### i. Notice of Termination

First, SIS argues that Orion failed to properly terminate under the Term and Termination provision of the SaaS Agreement, which provides that either party "may terminate this agreement upon thirty (30) days' notice, if the other party materially breaches any of the terms or conditions of this Agreement." (Doc. No. 70-3 at 4). Orion purported to terminate the SaaS agreement via videoconference on March 30, 2021. (Doc. No. 70 at 18; Doc. No. 71 at 10). On that call, Orion provided verbal notice of its belief that SIS had materially breached. (Doc. No. 71 at 10). Since the Miscellaneous provision of the contract provides that "all notices under this Agreement will be in writing," SIS asks the Court to find that Orion failed to provide timely written notice of its termination because a formal written termination letter was not sent until August 6, 2021. (Doc. No. 70 at 28). Orion argues that the oral notice of termination delivered on March 30, 2021, constituted sufficient notice under the Term and Termination provision because "that provision does not specify that notice be in writing." (Doc. No. 71 at 16). Orion concedes that it did not send

4

a written notice until August 6, 2021, but contends that "at most, Orion would be liable for the second installment payment that was due in April [2021]." (Doc. No. 71 at 16).

The Court first finds that the contract unambiguously requires that notice of termination by either party be in writing. In Georgia, "judgment as a matter of law is appropriate where the contractual language is plain, unambiguous, and capable of only one reasonable interpretation." *Franchise Enters., Inc. v. Ridgeway*, 278 S.E.2d 33, 36 (Ga. 1981). The Miscellaneous section of the SaaS contract provides the following:

> All notices under this Agreement will be in writing and will be deemed to have been duly given when received, if personally delivered; when receipt is electronically confirmed, if transmitted by facsimile or email; the day after it is sent, if sent for next day delivery by recognized overnight delivery service; and upon receipt, if sent by certified or registered mail, return receipt requested.

(Doc. No. 70-3 at 6) (emphasis added).

The Court finds that this requirement clearly and unambiguously applies to "all notices under [the] Agreement." All notices required under the "Term and Termination" provision therefore need to be in writing. (Doc. No. 70-3 at 5). Orion concedes that it did not send written notice until August 6, 2021. By its own admission, if in fact SIS materially breached and Orion properly terminated on August 6, 2021, Orion "would be liable for the second installment payment that was due in April [2021]." (Doc. No. 71 at 16). The key issue, then, is whether Orion's written termination on August 6, 2021 constituted proper termination for cause under the contract.

### ii. Termination for Cause

According to the language of the SaaS Agreement, "either party…may terminate this Agreement…if the other party materially breaches any of the terms or conditions of this Agreement." (Doc. No. 70-3 at 6). Orion claims that it properly terminated the agreement (at least

when it provided written notice on August 6, 2021) because "SIS breached the agreement by failing to deliver the Services, let alone a 'live' functioning system." (Doc. No. 71 at 15).

SIS claims that Orion repudiated, rather than properly terminated, the SaaS agreement "based on...complaints it had with implementation services under the PSA." (Doc. No. 70 at 19). SIS argues that Orion's complaints "related only to SIS's design and configuration work, not the software." (Doc. No. 75 at 5). Since SIS argues that the SaaS contract is unambiguous and "clearly does not permit termination for the material breach of another, separate contract," it asks the Court to find that Orion did not properly terminate the SaaS agreement. (Doc. No. 70 at 20).

The Court finds that there is a genuine issue of material fact as to whether SIS breached the SaaS agreement—and relatedly, whether Orion properly terminated for cause. As Orion notes, the SaaS agreement provides that SIS must use "commercially reasonable efforts to provide [Orion] the Services." (Doc. No. 71 at 7; Doc. No. 70-3 at 4). The SaaS Services Order Form (which is expressly incorporated into the SaaS Agreement) notes that "in consideration of Orion being a loyal SIS customer and the *early months of implementation (when software is not utilized)*, SIS would like to extend an annual 25% discount...to be applied each year for this agreement." (Doc. No. 70-3 at 3) (emphasis added). This language indicates that the parties contemplated that the implementation process for the deliverables would be measured in months.

Orion offers the sworn Declaration of Krstyn Breland ("Breland"), a former employee of Orion, who was "personally and substantially involved" with the SIS project. (Doc. No. 71-4). She identifies what she purports to be SIS's failures under the SaaS agreement, which includes "failure to deliver the Advance Payroll Module" and "failure to deliver the Field Data Capture Module." (*Id.* at 4). She also notes that "no systems were anywhere near 'live' as of February 2021," a year after the agreement was signed. (*Id.*). In January 2021, Sam Kharoba, SIS's Director of Strategic

6

Engagements, noted in an internal email that "[SIS] already missed 3 delivery dates" on some of the deliverables. (Doc. No. 71-8). The Court finds that this creates a genuine issue of material fact as to whether SIS used "commercially reasonable efforts to provide [Orion] the Services" under the SaaS contract. (Doc. No. 70-3 at 5-6).

Orion also argues that the software provided did not meet the agreed-upon standard for deliverables contemplated by the SaaS agreement and offers evidence of the parties' discussions leading up to, and during, the contract term. (Doc. No. 71 at 16). In its Reply, SIS argues that this evidence is not admissible to show that SIS materially breached because "any pre-contract promises" are inadmissible parol evidence given the contract's integration clause. (Doc. No. 75 at 2). Under Georgia law, "when a contract includes an entire agreement clause, the clause operates as a disclaimer, establishing that the written agreement completely and comprehensively represents all the parties' agreement." *Fabian v. Pontikakis*, 327 Ga. App. 392, 396 (2014). If a contract contains such an integration clause, "a party cannot argue they relied upon representations other than those contained in the contract." *Id.* (citations omitted). Nonetheless, Orion points to a clause in the SaaS Agreement that warrants that the Services "will perform in all material respects in accordance with its documentation." (Doc. No. 71 at 7; Doc. No. 70-3 at 5). Orion contends that this "documentation" refers to the Proposal and Project Charter, which may have been originally included in the same document as the SaaS Order Form and SaaS Agreement. (Doc. No. 71 at 7; Doc. No. 71-3).[2] SIS does not address this clause or offer any evidence to rebut Orion's contention

---

[2] Curiously, the SaaS Order Form and attached Terms and Conditions—that SIS argues constitutes the entire integrated agreement—include page numbers starting at "page 62." (Doc. No. 70-3 at 2). The Proposal and Project Charter, offered by Orion, are marked pages "1-61". (Doc. No. 71-3). This includes the "Project Pricing Terms and Conditions," located on page 60, that contains the language stating that "the project will operate under pre-existing and current professional services agreement in place." (Doc. No. 71-3 at 60).

7

that the "documentation" refers to the Proposal and Project Charter, which, if Orion is correct, would be admissible to show the agreed-upon standard for the deliverables.

Nonetheless, at this stage, the Court need not analyze whether each alleged breach claimed by Orion constitutes a breach of the SaaS Agreement or the PSA, or what constituted the agreed-upon standard for the quality of the deliverables. The Court has found that there is a genuine issue of material fact as to whether SIS used "commercially reasonable efforts" to provide Orion the Services listed on the SaaS Order Form and therefore cannot find as a matter of law that Orion unlawfully terminated the contract.

### b. Damages

Orion has met its summary judgment burden to show that there is a genuine dispute of material fact as to whether Orion properly terminated the SaaS agreement for cause (and whether SIS materially breached the SaaS agreement). Therefore, the Court need not decide as a matter of law the amount of SIS's purported damages, including pre- and post-judgment interest and attorneys' fees, in the event SIS prevails on its breach of contract claim. Nonetheless, the Court notes—as it explains in its Order denying Orion's Motion for Partial Summary Judgment (Doc. No. 99)—that the parties do not seem to agree on exactly what type of damages SIS is seeking on its affirmative breach of contract claim. Orion complains that SIS "cannot confirm any profits history" and that SIS "cannot rely merely on the contract balance to calculate its damages." (Doc. No. 19). Just as it did in its Motion for Partial Summary Judgment (Doc. No. 67), Orion relies on Georgia case law discussing the burden of proof for <u>consequential</u> lost profits damages to claim that SIS has failed to meet its burden or produce critical information. SIS argues that its principal co-owner, Mark Kershteyn, is competent to testify as to SIS's losses due to Orion's alleged breach. Presumably,

this is because SIS is seeking direct, rather than consequential, lost profits damages. In any case, the Court need not further analyze the parties' arguments at this stage.

### c. Breach of Warranty under the PSA

Finally, SIS contends that it is entitled to summary judgment on Orion's counterclaim for breach of the PSA because "it is undisputed that [Orion] failed to dispute any invoice submitted by SIS for implementation consulting services performed on the ERP Project under the PSA." (Doc. No. 70 at 22). To support this argument, SIS relies on Section 3(c) of the PSA. Section 3 is titled "Billing Procedures."

Section 3(c) provides, in full:

> Customer shall have fifteen (15) days from the date of the invoice to dispute any invoiced item, provided said dispute is communicated to Consultant in writing, identifying the specific item being disputed, and reasons for said dispute. Upon receipt of the notice of billing dispute by Consultant, both Consultant and Company shall attempt to resolve said dispute in good faith within 15 days of the date of the notice of billing dispute. In the event that an invoice presented to Company by Consultant is not disputed within the period of time specified in this paragraph, any and all items on the invoice shall be considered an undisputed and valid invoice for the services performed by the parties hereto.

(Doc. No. 70-2 at 3).

SIS argues that Section 3(c) applies to all disputes, and that the limitations period "was designed to timely inform SIS of dissatisfaction with its services so that any issues could be promptly cured." (Doc. No. 70 at 23). SIS claims that the provision is a condition precedent to Orion asserting a claim complaining of any of SIS's services under the PSA. (*Id.*). In response, Orion contends that "nothing in [Section 3(c)] suggests that sending notice of a billing dispute is a condition precedent to bringing a warranty claim." (Doc. No. 71 at 21). Instead, Orion argues that Section 3(c) merely lays out the procedure for contesting an invoice. (*Id.*).

In Georgia, "conditions precedent, which are not favored in interpreting contracts, are created by language such as 'on condition that,' 'if,' and 'provided,' or by explicit statements that

9

certain events are to be construed as conditions precedent." *Choate Constr. Co. v. Ideal Elec. Contractors*, 246 Ga. App. 626, 628 (2000) (citation omitted). "If the contract's terms are clear and unambiguous and do not clearly establish a condition precedent, [a court] cannot construe the contract to create one." *Id.*

The Court finds that Section 3(c) does not clearly establish, as a matter of law, a condition precedent for bringing a warranty claim. As Orion points out, "the express consequence of not providing notice of a billing dispute is that the invoice shall be considered an undisputed and valid invoice for the services performed." (Doc. No. 71 at 21). Section 3(c) does not explicitly tie all disputes to the 15-day notice requirement; instead, it seems to apply only to a dispute over "any invoiced item" (in other words, a "billing dispute").

Orion has brought a claim for breach of warranty under the PSA. At this stage, the Court cannot find as a matter of law that Orion was required under the contract to comply with the 15-day notice requirement in Section 3(c) for a warranty dispute. The Court therefore denies SIS's motion for summary judgment on Orion's counterclaim.

### B. Defendant's Alternative Motion to Continue (Doc. No. 71)

"Out of an abundance of caution," Orion attached an "Alternative Motion to Continue" to its Response to Plaintiff's Motion for Summary Judgment. (Doc. No. 71). The Court has denied SIS's Motion for Summary Judgment and therefore denies as moot Orion's Alternative Motion to Continue. (Doc. No. 71).

### C. Plaintiff's Objection to Defendant's Evidence Offered in Rebuttal to Plaintiff's Motion for Summary Judgment (Doc. No. 76)

In Plaintiff's Objection to Defendant's Evidence Offered in Rebuttal to Plaintiff's Motion for Summary Judgment, SIS objects to the testimony of Krstyn Breland, a "non-retained expert witness," because SIS contends that Breland is not qualified to offer an opinion that SIS was

"developing, testing, and modifying its software at Orion in an effort to become fully developed software." (Doc. No. 77 at 1). Accordingly, SIS asks the Court to strike her Declaration, which was attached to Orion's Response to Plaintiff's Motion for Summary Judgment. (*Id.* at 2). Orion did not respond.

In Orion's "Designation of Expert Witnesses," it describes Breland as one of several individuals who are "fact witnesses…who also have technical or other specialized knowledge that will assist the trier of fact to understand the evidence or to determine a fact issue." (Doc. No. 59 at 2). Breland's Declaration indicates that she was "personally and substantially involved with the performance of SIS, LLC in providing services to Orion" under the project. (Doc. No. 71-4 at 3). To the extent she described her personal knowledge about the project and its deliverables, the Court finds that the testimony is sufficient at the summary judgment stage to rebut SIS's characterization of the dispute. For that reason, the Court overrules Plaintiff's Objection to Defendant's Evidence Offered in Rebuttal to Plaintiff's Motion for Summary Judgment. (Doc. No. 77).

The Court hereby **DENIES** Plaintiff's Motion for Summary Judgment (Doc. No. 70) and **DENIES** as moot Defendant's Motion to Continue (Doc. No. 71). The Court also **DENIES** Plaintiff's Objection to Defendant's Evidence Offered in Rebuttal to Plaintiff's Motion for Summary Judgment. (Doc. No. 76).

Signed at Houston, Texas, on this the 12th day of December, 2023.

Andrew S. Hanen
United States District Judge